**Nelson BROWN, Petitioner,**

v.

**Charles GREINER, Superintendent, Green Haven Correctional Facility, Respondent.**

**No. 01–CV–2528 (JG).**

United States District Court, E.D. New York.

March 21, 2003.

Erica Horwitz, Lynn W.L. Fahey, Appellate Advocates, New York City, for Petitioner.

Charles J. Hynes, District Attorney, Kings County, Brooklyn, NY, By Tziyonah M. Langsam, for Respondent.

## MEMORANDUM AND ORDER

GLEESON, District Judge.

New York has two sentence-enhancing statutes for persistent felony offenders. One is the persistent *violent* felony offender provision in N.Y. Penal Law § 70.08, which practitioners of criminal law in New York often refer to as the ·"mandatory" one. That statute applies to defendants who stand convicted of a violent felony (as defined in N.Y. Penal Law § 70.02) and have previously been convicted of two or more predicate violent felonies (as defined in N.Y. Penal Law § 70.04(1)(b)). Such defendants receive an indeterminate sentence of imprisonment, the maximum of which must be life. Minimum terms are prescribed by the statute as well and vary depending on the grade of the offense of conviction. *See* N.Y. Penal Law § 70.08(3). For example, defendants convicted of a class D felony (like ·the petitioner in this case) must receive a minimum period of imprisonment of at least 12 years, but it may not exceed 25 years. *Id.* Under § 70.08, "the court *must* impose" an enhanced penalty once it finds that the predicate convictions occurred, *id.* at § 70.08(2)(emphasis added), hence the use of the shorthand "mandatory" to describe that form of sentence enhancement.

The second persistent felony offender statute is N.Y. Penal Law § 70.10. This statute is designed to provide enhanced punishment for recidivists who fail to qual-

ify as mandatory persistent violent felony offenders under § 70.08. It characterizes as a "persistent felony offender" any defendant who stands convicted of a felony and has two prior felony convictions (whether or not they are for violent felonies) as defined in the statute. *See* N.Y. Penal Law § 70.10(1)(a)-(c). As an enhanced penalty for such offenders, § 70.10 provides that, in lieu of the sentence otherwise authorized by the penal law, persistent felony offenders *"may"* be sentenced as though the offense of conviction were a class A–1 felony. *Id.* (emphasis added). For defendants like the petitioner here, the enhancement is severe. As a defendant convicted of a class D felony, he faced a maximum of seven years in prison;[1] as a persistent felony offender, he faced a minimum of 15 years (even longer than the mandatory enhancement) and a maximum sentence of life in prison.

Unlike the enhanced sentences prescribed by the persistent *violent* felony offender provision, which again are mandatory, the enhancement under § 70.10 does not necessarily follow once a defendant is found to have the requisite prior convictions. Rather, another step is required. After the defendant is determined to be an eligible recidivist, the sentencing court must conduct a hearing to determine whether "it is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and lifetime supervision will best serve the public interest." *Id.* at § 70.10(2); *see also* N.Y.Crim. Proc. Law ("CPL") § 400.20. Only if the court reaches that "opinion" and supports it with suf-

---

1. *See* N.Y. Penal Law § 70.00(2)(d). Also, because petitioner was a second violent felony offender, he faced a minimum term of impris-

onment of five years. *See* N.Y. Penal Law § 70.04(3)(d).

ficient factual findings may the enhanced (*i.e.*, A–1 felony) punishment be imposed. This form of sentence enhancement is therefore referred to as the "discretionary" persistent felony offender punishment.

The central issue in this case is a constitutional attack on the discretionary persistent felony offender statute. Petitioner Nelson Brown contends that the sentence imposed upon him under that statute violated the rule announced by the Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). I agree. New York's discretionary persistent felony offender statute subjected Brown to a term of imprisonment that more than doubled the statutory maximum sentence he faced based on the jury's verdict. The enhanced sentence was based on a judge's factual findings about Brown's personal history and character. Put another way, it was based on facts that were not charged in the indictment, submitted to a jury, or proved beyond a reasonable doubt. This violated the rule in *Apprendi. Id.* at 490, 120 S.Ct. 2348. Since Brown raised his claim on direct review in state court, which denied it on the merits, there is no procedural impediment to his reliance on it here. Brown is thus entitled to habeas relief. I hereby grant the petition and issue the writ.

**2.** The following citation forms are used in this decision. "Trial Tr." refers to the transcript of Brown's criminal trial in 1997. "Hr'g Not." refers to the Notice of Hearing and the accompanying Criminal Court order, dated July 23, 1997 and signed by Judge Priscilla Hall, as well as supporting information pertaining to Brown's sentencing. "Sent. Tr. I.A," "Sent. Tr. I.B," and "Sent. Tr. I.C" refer respectively to the transcripts of proceedings held on August 14, 1997, September 16, 1997, and September 23, 1997, in connection with Brown's first sentencing. "Sent. Tr. II.A"

## BACKGROUND

### A. Brown's Conviction

On the evening of January 15, 1996, a group of men gathered outside Brown's apartment. One person in that group had apparently shot Brown's brother earlier that day, and Brown feared for his own safety, so he and three of his friends inside his apartment, Andrew Tucker, Rodney Green and McKinley Miller, armed themselves and ran up to the roof. Shortly thereafter, a gunfight erupted between Brown (and his friends on the roof) and the men on the street below. During the gunfight, a stray bullet fired from the street went through the window of a downstairs apartment and struck a young boy, who suffered some brain damage and vision loss in one eye. No one else was injured.

After learning that the boy had been shot, Brown took the guns he and his friends had used and threw them in the garbage. Later that night, he went to the police with the boy's mother and turned himself in. The police arrested Brown and searched his apartment, where they seized from a locked hallway closet a firearm, ammunition, drugs, and a large amount of cash. Before trial, however, this evidence was suppressed because neither Brown nor his mother had voluntarily consented to the search. *See* Trial Tr. 311–16.[2]

and "Sent. Tr. II.B" refer respectively to the transcripts of proceedings held on March 2 and March 9, 2000, in connection with Brown's second sentencing. "App. Br. I" and "App. Br. II" refer respectively to the appellate briefs filed in the Appellate Division, Second Department, following Brown's first and second sentencings. "Amend. Pet." refers to Brown's Amended Petition for a Writ of Habeas Corpus, filed on July 26, 2002. "Gov't Memo" refers to the Memorandum of Law filed by the Kings County District Attorney on October 24, 2002.

Brown and each of his friends were charged with thirteen separate crimes: attempted murder in the second degree, two counts of assault in the first degree, one count of attempted assault in the first degree, one count of reckless endangerment in the first degree, and four counts each of criminal possession of a weapon in the second degree and four counts of criminal possession of a weapon and in the third degree. Tucker waived a jury trial and was convicted of criminal possession of a weapon in the second degree. The other three defendants went to trial together, but their cases were tried to two different juries because Green argued that he was never on the roof, whereas Miller and Brown argued the defense of justification. Green's jury found him guilty of assault, reckless endangerment, and criminal possession of a weapon in the second and third degrees. The other jury acquitted Brown and Miller on all charges except one count of criminal possession of a weapon in the third degree, based on the gun possessed by Tucker.

Tucker was sentenced as a youthful offender to probation. Green was sentenced as a second felony offender to concurrent terms of imprisonment, the longest of which were ten years in prison for assault and criminal possession of a weapon in the second degree. Miller was sentenced, based on two juvenile offenses and three prior violent felony convictions, as a persistent violent felony offender (*i.e.,* pursuant to N.Y. Penal Law § 70.08) to a term of imprisonment of 16 years to life.

### B. *Brown's Sentencing*

Brown's sentencing spanned several years. He was first sentenced in 1997 as a discretionary persistent felony offender (*i.e.,* pursuant to N.Y. Penal Law § 70.10) to fifteen years to life imprisonment. The Appellate Division overturned that sen-tence because the sentencing judge had failed to make the factual findings required by New York law. The sentencing court resentenced Brown in 2000, again as a discretionary persistent felony offender and to the same sentence, after making the required findings. The resentencing was affirmed by the Appellate Division. Because the details of his sentencing are central to Brown's *Apprendi* claim, they are set forth below.

### 1. *The First Sentencing*

Prior to Brown's sentencing, the court, on its own motion pursuant to N.Y. CPL § 400.20(3), initiated a hearing to determine whether Brown should be sentenced as a persistent felony offender. *See* Hr'g Not. The court's action was based on Brown's prior convictions and assorted facts and circumstances surrounding his present and prior convictions. As for prior felony convictions, the court first noted that: (1) in 1983, a jury in Kings County convicted Brown of robbery in the second degree, assault in the second degree, and assault in the third degree, for which he was sentenced to concurrent two and one-third to seven-year terms of imprisonment, of which he served more than five years before being paroled in September 1988; and (2) in 1992, Brown pled guilty in federal court in West Virginia to conspiring to transport firearms and illegal drugs, for which he was sentenced to three years in prison, followed by five years of supervised release. The court also observed that Brown had been convicted of attempted petit larceny in 1981. *Id.* at 4–6.

In the Notice of Hearing, the court also identified several "underlying facts for [Brown's prior] offenses and other matters pertaining to [Brown's] history and character and criminal conduct." *Id.* at 6. These facts included: (1) the circumstances underlying his federal conviction, including

his alleged assault of a law enforcement officer; (2) Brown's present conviction violated the conditions of his federal supervised release term; (3) the gun, drugs, and cash found in the closet in Brown's apartment, which had been suppressed at trial; (4) the circumstances surrounding the present conviction, including Brown's admission to participating in the gunfight and disposing of the firearms after the fight, and the serious injuries to the boy. *Id.* at 6–8.

On August 14, 1997, following the issuance of the Notice of Hearing, Justice Starkey, who presided at Brown's trial, held a hearing pursuant to N.Y. CPL § 400.20 to determine whether Brown should receive an enhanced sentence as a discretionary persistent felony offender. After a brief presentation by the prosecutor, the court found that each of Brown's prior convictions qualified as predicate felony offenses. Sent. Tr. I.A at 11; *see* N.Y. Penal Law § 70.10(1)(b). The court then heard arguments on whether Brown should receive an enhanced sentence as a persistent felony offender. Sent. Tr. I.A at 11–17.

The prosecutor argued in favor of the enhancement, which, as noted above, would require the court to impose an indeterminate term with a minimum of between 15 and 25 years imprisonment and a maximum of life imprisonment.[3] Specifically, the prosecutor sought a minimum sentence of 25 years based on the following facts: (1) Brown's co-defendant, Miller, had been sentenced to sixteen years to life; (2) Brown's present conviction occurred while he was on supervised release from his 1992 federal conviction; (3) that federal conviction had involved the transportation of large amounts of cocaine in exchange for firearms; (4) in the present case,

Brown admitted that he had possessed four guns at his home that evening and that he had distributed and participated in using those guns; and (5) the suppressed evidence found in the closet in Brown's apartment. *Id.* at 11–13.

Brown's counsel argued against sentencing Brown as a discretionary persistent felony offender and instead asked the court to sentence him as a predicate felon under N.Y. Penal Law § 70.04 to a term of imprisonment of five to seven years. Sent. Tr. I.A at 13–15. Counsel objected to the court's consideration of the suppressed evidence (which, she argued, belonged to Brown's brother) and asked the court to consider various mitigating circumstances surrounding his present conviction, including that Brown had turned himself in to the police and admitted his involvement in the gun fight, that the injured boy's mother herself was asking for leniency for Brown, and that Brown had reacted to threats from the person who killed his brother. *Id.* Brown also testified and asked the court for mercy. *Id.* at 16–17. Following Brown's testimony, the court adjourned.

On September 16, 1997, the parties again appeared for sentencing. The prosecutor again asked that Brown be sentenced to 25 years to life, the maximum possible sentence as a persistent felony offender, and cited many of the same reasons she advanced at the August hearing. Sent. Tr. I.B at 2–7. The prosecutor also added that the only reason Brown's prior convictions did not automatically elevate his sentence under the mandatory terms of the persistent violent felony offender statute was because his 1992 federal conviction was for conspiracy to deal firearms and narcotics, rather than for the substantive

---

**3.** As mentioned above, without the enhancement under the persistent felony offender stat-
ute, Brown faced a maximum term of imprisonment of seven years.

offenses he committed in furtherance of the conspiracy. Sent. Tr. I.B at 2–3, 6–7. Defense counsel made arguments similar to the ones made at the earlier proceeding, and again objected to, among other things, the court's consideration of the suppressed evidence. *Id.* at 10–12. Once again, the court postponed sentencing.

On September 23, 1997, the sentencing court, without comment from either the prosecution or the defense, sentenced Brown as a persistent felony offender to 15 years to life. Sent. Tr. I.C at 4. The court noted that it was doing so "with reluctance and some reservation" because it felt that an appropriate sentence was somewhere between the seven-year maximum available without the enhancement and the fifteen-year minimum prescribed by the persistent felony offender statute, but that "all the facts in the defendant's background and record ... called for [the greater] sentence." *Id.* at 2–3.

### 2. *The First Appeal*

Brown appealed his conviction and sentence to the Appellate Division of the New York State Supreme Court, Second Department, raising three claims: (1) the evidence was insufficient to establish his conviction on the gun charge; (2) the jury instruction on constructive possession was erroneous; and (3) the court improperly sentenced him as a persistent felony offender. *See* App. Br. I.

On January 31, 2000, the Appellate Division affirmed Brown's conviction, rejecting his sufficiency claim as both unpreserved for appellate review and without merit and his jury instruction claim as without merit. *People v. Brown,* 268 A.D.2d 593, 704 N.Y.S.2d 83, 84 (2d Dep't 2000). However, it vacated Brown's sentence because the sentencing court had failed to follow the "'two-pronged analysis'" mandated by New York law. *Id.* (quoting *People v.*

*Smith,* 232 A.D.2d 586, 649 N.Y.S.2d 444 (1996)). The court stated that before a defendant could be sentenced as a persistent felony offender, the sentencing court had to make two determinations:

> First, the court must determine if the defendant is a persistent felony offender as defined in [N.Y.] Penal Law § 70.10(1), namely, that he previously has been convicted of at least two felonies. Second, the court must determine "if the history and character of the defendant and the nature and circumstances of his criminal conduct are such that extended incarceration and lifetime supervision of the defendant are warranted to best serve the public interest."

*Brown,* 704 N.Y.S.2d at 84 (quoting N.Y.Crim. Proc. Law § 400.20). Because the sentencing court failed to "set forth on the record its reasons for finding the second element present," and "it was impossible to ascertain what conduct or circumstances the court relied on in determining that the second prong of the persistent felony offender analysis was satisfied," the Appellate Division remanded Brown's case for sentencing. *Brown,* 704 N.Y.S.2d at 84.

### 3. *The Resentencing*

On March 2, 2000, Brown appeared for resentencing before the same sentencing court. The prosecutor argued that the Appellate Division's opinion had not reopened the court's determination that Brown should be sentenced as a persistent felony offender, but required only that the court state the factors it had previously considered in making that determination. Sent. Tr. II.A at 3–4, 10. The prosecutor then reminded the court of the factors she had cited in 1997 in support of the enhanced sentence, including that: (1) Brown's 1983 sentence for robbery and assault did not rehabilitate him, since he

returned to crime a few years after being released in 1988 and was convicted in federal court in 1992; (2) his sentence for conspiring to deal drugs and cocaine also did not steer Brown away from further crime; (3) Brown was acquitted of several other serious charges related to his present conviction, and the events surrounding those charges contained several aggravating factors, including Brown's distribution of guns to his friends before they engaged in the gun battle; (4) a firearm, ammunition, drugs and a large amount of cash (*i.e.*, the suppressed evidence) had been found in the locked closet in Brown's apartment; (5) Miller, Brown's co-defendant, had been sentenced as a persistent violent felony offender to 16 years to life in prison; and (6) if Brown's federal drug and firearm case had resulted in prosecution and conviction under New York state law, Brown would have been sentenced as a persistent violent felony offender. *Id.* at 4–12, 26.

Brown's counsel[4] objected to the prosecutor's argument that the remand from the Appellate Division called only for clarification, and argued that Brown should not be sentenced as a persistent felony offender because: (1) he had provided substantial assistance to the government's investigation into the drug and gun conspiracy in 1991; (2) there were several mitigating circumstances surrounding his present conviction, including the fact that his brother had been shot that day by the people outside his apartment; (3) the evidence seized from the closet was not Brown's and had been suppressed at trial, and thus should not be considered at all; (4) Brown had not admitted to distributing the firearms to his friends, only to disposing of them, and that the statement that he had distributed the guns, which came from a co-defendant, had also been suppressed; (5) Brown had been rehabilitated while in prison and was currently a model prisoner; (6) Miller was sentenced as a persistent violent felony offender due to four previous violent felony convictions, so his sentence was not relevant given Brown's situation and mitigating circumstances. *Id.* at 13–25.

When Brown's attorney began to argue that the court should not consider the evidence found in the closet, the sentencing court specifically asked the prosecutor for any authority to support the court's "consideration of suppressed evidence on a proceeding such as this." *Id.* at 16. The prosecutor stated she could not point to the precise section of the code, but "a court can consider things which are outside the purview of the trial." *Id.* at 16.[5] The sentencing court acknowledged this principle, but stated that it did not "think the rule speaks [to whether] everything and anything out of the purview of the trial may be considered." *Id.* at 17. The prosecutor replied that "[w]hatever weight this [sentencing court] chooses to give" the suppressed evidence, it was still "a factor and part of the file and the proceedings in this case." *Id.* In rebuttal, defense counsel highlighted that "Brown was not charged with [possession of the contraband]" and that "he never litigated it." *Id.*

On March 9, 2000, the sentencing court resentenced Brown as a persistent felony offender to fifteen years to life in prison. Sent. Tr. II.B at 13. First, the court stated that Brown had previously been

---

4. Brown's attorney at the second sentencing had not represented Brown at trial or at the first sentencing, but had represented him on the first appeal to the Appellate Division.

5. The precise section of the statute is N.Y. CPL § 400.20(5), which permits the court to rely on "any relevant evidence, not legally privileged, regardless of admissibility under the exclusionary rules of evidence."

convicted of two felonies. *Id.* at 4. Second, citing directly to N.Y. CPL § 400.20, the court found that "the history and character of the defendant and nature and circumstances of his criminal conduct is such that extended incarceration and lifetime supervision are warranted to best serve the public interest." Sent. Tr. II.B at 4. In support, the court gave the following reasons:

(1) Brown was arrested for robbery in 1981, convicted of attempted petit larceny, and sentenced as a youthful offender to 30 days plus probation;

(2) he was arrested on bench warrants three times while on probation from that offense;

(3) he was convicted of charges of robbery and assault in 1983;

(4) he was released on parole from those offenses in 1986, but violated his parole and was rearrested in 1988;

(5) he was convicted in federal court in 1992 of conspiring to deal drugs and firearms and sentenced to 36 months in prison and 60 months of supervised release;

(6) his present offense constituted a violation of the terms of his federal supervised release;

(7) his federal conviction was for conduct that occurred little more than a year after the parole based on his 1983 state conviction had expired;

(8) although he gave substantial assistance to investigators, Brown's federal conviction was based on numerous deliveries of drugs and firearms to drug organizations, and at the time of his arrest Brown had attacked a law enforcement officer and was aggressive and abusive;

(9) he committed the present crime only two years after being sentenced by the federal court;

(10) in committing the present crime, Brown called together his friends and distributed guns to them, they all went to the roof and engaged in a gunfight, a bullet from that gunfight seriously injured a child, and Brown had admitted to disposing of the firearms after the fight; and

(11) when the police searched Brown's apartment two days after the gunfight, they found in a locked closet a gun, large amounts of ammunition, crack cocaine, marijuana, ziplock bags, and over two thousand dollars in cash.

*Id.* at 4–11.

Based on the foregoing reasons, the court adjudicated Brown a persistent felony offender. *Id.* at 11. After brief arguments were made by the prosecution and defense, Brown himself spoke. He complained that some of the findings made by the court were not accurate. Specifically, Brown asserted that he had not assaulted a federal officer; he had not been "out there with … guns trying to hurt [somebody;" he "wasn't outside trying to sell drugs;" and he "never had [a] key to [the] closet." *Id.* at 12–13. The court then sentenced Brown to fifteen years to life in prison, the minimum penalty under the persistent felony offender statute. *Id.* at 13.

### C. *The Direct Appeals From the Resentencing*

Immediately after resentencing, Brown sought leave to appeal directly to the New York Court of Appeals based on his insufficiency and jury instruction claims. *See* Amend. Pet., Ex. K. The Court of Appeals denied his application on April 13, 2000. *People v. Brown,* 94 N.Y.2d 945, 710 N.Y.S.2d 2, 731 N.E.2d 619 (2000) (table).

Brown also appealed his resentencing to the Appellate Division, claiming that his enhanced sentence as a discretionary persistent felony offender was unduly harsh and improperly based in part on the suppressed evidence seized from the closet. *See* App. Br. II at 30–37. In support of this claim, Brown cited specifically to the Supreme Court's then-recent decision in *Apprendi*, 530 U.S. at 466, 120 S.Ct. 2348. App. Br. II. at 36–37. On June 11, 2001, the Appellate Division affirmed Brown's resentencing, holding that it complied with the mandates of N.Y. Penal Law § 70.10(2) because the sentencing court "adequately set forth on the record the reasons it was of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct demonstrated that extended incarceration and lifetime supervision would best serve the public interest." *People v. Brown*, 284 A.D.2d 406, 726 N.Y.S.2d 280, 280 (2d Dep't 2001). Though Brown's *Apprendi* claim was not addressed explicitly, the court held that his "remaining contention is without merit." *Id.*

On July 2, 2001, Brown again sought permission to appeal his resentencing to the New York Court of Appeals. Amend. Pet., Ex. O. In a letter from counsel dated July 24, 2001, he explicitly sought review of the claim that the persistent felony offender sentence violated the rule of *Apprendi*. *Id.* at 6 n. 4. On August 2, 2002, the New York Court of Appeals again denied Brown leave to appeal. *People v. Brown*, 96 N.Y.2d 916, 732 N.Y.S.2d 633, 758 N.E.2d 659 (2001) (table).

### D. *Brown's Habeas Petition*

In May 2001, before either the Appellate Division or the New York Court of Appeals had ruled on Brown's appeal of his resentencing, Brown filed this habeas petition. His petition raised the same three claims that he raised in his original appeal to the Appellate Division. On June 5, 2001, I issued an order finding the petition premature because Brown's resentencing claim had not yet been properly exhausted in state court. I also noted that his first claim, related to the sufficiency of the evidence presented at trial, was deemed by the Appellate Division to be procedurally barred, and that in order to maintain it Brown needed to show cause and prejudice or a miscarriage of justice. In July 2001, Brown amended his petition to remove the sentencing claim and asked me to hold his federal petition in abeyance pending the outcome of a state petition for collateral relief. I did so in an order dated July 9, 2001.

Brown promptly decided not to file the state petition after all and sought to proceed once again with his federal petition. In July 2002, I granted Brown permission to amend his petition to include his sentencing claims. On July 26, 2002, with the assistance of counsel, he filed an amended petition setting forth four grounds for relief: (1) there was insufficient evidence that he constructively possessed a weapon; (2) the trial court's jury charge on constructive possession was erroneous; (3) his sentence was unconstitutional because it was based on suppressed evidence not belonging to Brown; and, (4) his enhanced sentence as a persistent felony offender was unconstitutional (and violated the rule in *Apprendi)*, because it was based on disputed facts that were neither submitted to the jury nor proved beyond a reasonable doubt.

### DISCUSSION

### A. *The Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") has narrowed the scope of federal habeas review of state convictions where the state court

has adjudicated a petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d). Under the AEDPA standard, which applies to habeas petitions filed after AEDPA's enactment in 1996, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir.2001).

A decision is "contrary to" clearly established federal law as determined by the Supreme Court "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 413, 120 S.Ct. 1495. A decision is an "unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* "Under the latter standard, 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.' " *Gilchrist,* 260 F.3d at 93 (quoting *Williams,* 529 U.S. at 411, 120 S.Ct. 1495). Interpreting *Williams,* the Second Circuit has added that although "[s]ome increment of incorrectness beyond

error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted).

This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether it has explained its reasoning or even alluded to federal law in its decision. As the Second Circuit explained in *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir. 2001):

> [f]or the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim—even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

### B. *Petitioner's Claims*

Brown's amended petition raises four grounds for relief. The first two relate to his conviction. He claims that the evidence presented at trial was insufficient to establish that he constructively possessed a weapon, and that the trial court erroneously charged the jury on the principle of constructive possession. His other two claims relate to his sentencing. He claims that the sentencing court inappropriately relied, at least in part, on the suppressed evidence seized from his apartment, and that his enhanced sentence under the persistent felony offender statute constituted an *Apprendi* violation.

### 1. *The Insufficiency Claim*

Brown claims that the evidence was legally insufficient to establish his guilt of criminal possession of a weapon in the third degree. The Appellate Division, citing Brown's failure to object at trial and N.Y. CPL § 470.05(2), ruled that this claim was unpreserved for appellate review. *Brown,* 704 N.Y.S.2d at 84. It also rejected the claim on the merits, concluding that the evidence at trial "was legally sufficient to establish the defendant's guilt beyond a reasonable doubt." *Id.*

Federal courts generally may not review state court decisions that rest on an adequate and independent state procedural ground unless the petitioner can show both cause and prejudice for the default or a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *see Lee v. Kemna,* 534 U.S. 362, 376, 381, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002) (noting the existence of a "small category" of "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question"). A petitioner may establish cause by showing that the basis for the claim was not reasonably available to his counsel or that some interference by officials made compliance impracticable. *See McCleskey v. Zant,* 499 U.S. 467, 493–94, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). To satisfy the prejudice requirement, the alleged error must have worked to the petitioner's actual and substantial disadvantage. *See Murray v. Carrier,* 477 U.S. 478, 493–94, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). If a petitioner cannot show cause and prejudice, the procedural default may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to enter-

tain the claim. A fundamental miscarriage of justice requires a showing "by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner [guilty]." *Sawyer v. Whitley,* 505 U.S. 333, 336, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

Brown has failed to show any cause for his procedural default, and I do not find that a fundamental miscarriage of justice will result if I decline to entertain this claim. The claim is therefore rejected.

### 2. *The Improper Jury Instruction Claim*

Brown claims that the trial court improperly instructed the jury regarding the principle of constructive possession of a weapon. He claims that the court's instruction allowed the jury to convict him of criminal possession of a weapon in the third degree for constructively possessing Tucker's firearm even though Brown lacked sufficient "dominion or control" over Tucker to support such a conclusion. Although Brown conceded that he had failed to object to the instruction at trial, the Appellate Division found the claim to be "without merit," *Brown,* 704 N.Y.S.2d at 84, a disposition that poses no procedural default bar to habeas relief.

The adequacy of a state court's jury charge is a matter of state law and is not ordinarily grounds for habeas relief. *United States ex rel. Smith v. Montanye,* 505 F.2d 1355, 1359 (2d Cir.1974). For a jury charge to give rise to such relief, a petitioner must carry a heavy burden. "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203

(1977). The petitioner must show "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.... [T]he question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial process that the resulting conviction violates due process." *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). In making this determination, a court "must consider the challenged portion of the charge not in 'artificial isolation,' but rather 'in the context of the overall charge.'" *Justice v. Hoke,* 45 F.3d 33, 34 (2d Cir.1995) (quoting *Cupp,* 414 U.S. at 146–47, 94 S.Ct. 396).

Brown has not overcome this high threshold. The jury instruction given by the trial court was virtually identical to the model criminal charge for constructive possession of a firearm outlined in CJI2d (N.Y.) § 9.70 Constructive Possession. Although the charge included references to Brown's "partners in crime," when viewed in its entirety, it consistently reiterated that the jury had to find that Brown had sufficient control over a "partner" in order to subject Brown to criminal liability under the principle of constructive possession. I perceive no error in the charge as a whole. At any rate, the state court's rejection of Brown's challenge cannot be characterized as an unreasonable application of federal law.

3. *The Challenge to the Use of Suppressed Evidence at Sentencing*

Brown contends that the sentencing court violated his due process rights when it considered the evidence that was seized from the closet in Brown's apartment, evidence that was suppressed at trial. He claims that the judge directly attributed the evidence to Brown despite the absence of evidence that he possessed it. Since the judge considered this evidence during the sentencing, Brown claims his sentence was based in part on materially false information and was therefore unconstitutional. *See United States v. Tucker,* 404 U.S. 443, 446–47, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Townsend v. Burke,* 334 U.S. 736, 740–41, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948).

A sentencing judge exercises "wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed." *Williams v. New York,* 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). In setting a defendant's sentence within the prescribed statutory range, a sentencing judge may properly consider hearsay statements, uncharged criminal activity, and even criminal activity underlying charges of which the defendant was acquitted. *See United States v. Romano,* 825 F.2d 725, 728 (2d Cir.1987). Physical evidence seized in violation of the Fourth Amendment is by no means unreliable. To the contrary, the Second Circuit, contrasting such evidence with involuntary confessions, has declared it "inherently reliable." *United States v. Tejada,* 956 F.2d 1256, 1261 (2d Cir.1992). A judge may consider such evidence if it was not gathered specifically for the purpose of influencing the sentencing judge, *id.* at 1262–63, as long as the defendant has an opportunity to respond to any misinformation. *See United States v. Concepcion,* 983 F.2d 369, 387–88 (2d Cir.1992).

Here, there was ample reason, including Brown's own admission to disposing of the guns that were used in the gunfight, for the sentencing judge to consider the gun, ammunition and other contraband seized from the closet in Brown's

apartment. Its relevance, and the weight to be given it, were ably disputed by defense counsel and the defendant himself at sentencing. Finally, I note that the sentencing court never directly attributed the contraband to Brown; instead, it merely noted that "a search of defendant's apartment on January 16, 1996, resulted in the recovery of [the contraband evidence]." Sent. Tr. II.B. at 10–11. There was nothing inappropriate, let alone unconstitutional, in taking that fact into consideration during the sentencing phase.

### 4. *The Apprendi Claim*

■ Brown claims that his enhanced sentence under New York's persistent felony offender statute is unconstitutional. He first raised this claim on appeal from his second sentencing. *See* App. Br. II at 36–37. Relying on *Apprendi,* Brown claimed that his enhanced sentence violated his Sixth Amendment rights because it was based in part on facts that had not been submitted to a jury and proved beyond a reasonable doubt. The Appellate Division dismissed this contention as without merit. *Brown,* 726 N.Y.S.2d at 280. That dismissal constitutes an "adjudication on the merits" within the meaning of 28 U.S.C. § 2254(d)(1). *See Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001). I find that the Appellate Division's ruling was contrary to the rule that was clearly established by *Apprendi.* Alternatively, it was an unreasonable application of *Apprendi* to the persistent felony offender statute.

### a. *Constitutional Limits on Sentence Enhancements*

In the past 17 years alone, a significant body of Supreme Court caselaw has developed on the subject of sentence enhancements based on facts found not by juries after trial, but rather by judges in the sentencing phase of a criminal case. Although those enhancements take different forms, the Supreme Court has addressed two: mandatory minimum sentences and enhanced maximum sentences. *See, e.g., McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (mandatory minimum five-year sentence for defendants who visibly possessed a firearm during the commission of certain enumerated offenses); *Apprendi,* 530 U.S. at 466, 120 S.Ct. 2348 (enhanced maximum sentence for defendant who committed crime with invidious discriminatory intent). Some sentence-enhancing statutes, including the one at issue here, involve both types of provisions. At the time Brown was convicted, he faced a maximum sentence of seven years. The discretionary persistent felony offender statute operated both to raise the maximum sentence he faced (to life) and to establish a minimum sentence (15 years) that far exceeded his unenhanced maximum sentence of seven years.

■ As a general matter, a mandatory minimum sentence, imposed based on a fact found only by the judge after a jury has already found the defendant guilty, is constitutionally permissible, at least where the minimum sentence is within the range of imprisonment the defendant faced when the jury found him guilty and the triggering fact is not one that has historically been treated as an offense element. *See Harris v. United States,* 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002); *McMillan,* 477 U.S. at 79, 106 S.Ct. 2411. Statutes that enhance maximum sentences have not fared so well, as discussed below. The vulnerability of Brown's indeterminate sentence, therefore, lies not in the fact that the "front end" of 15 years was a legislatively-prescribed minimum sentence, but rather in the fact that it was greater than the unenhanced maximum sentence he

faced at the time the jury found him guilty.

The Supreme Court held in *Apprendi* that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. The respondent contends that this *"narrow* holding of *Apprendi"* is inapplicable to the statute at issue here because it imposes enhanced sentences based on prior convictions and allows judges to make traditional sentencing determinations. Gov't Memo at 15 (emphasis added). This argument misapprehends the dramatic evolution of the Supreme Court's sentencing jurisprudence over the past decade. In fact, as discussed below, where a sentence-enhancing statute elevates the maximum authorized sentence, the rule in *Apprendi* is quite broad. It is the exception to the rule—for sentence-enhancements based on the "fact of a prior conviction"— that is narrow, far too narrow to embrace sentences under the discretionary persistent felony offender statute, at least where, as here, the minimum sentence imposed · is higher than the maximum sentence authorized by the ·offense of conviction.

The exception to *Apprendi's* rule originated in *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). Almendarez–Torres was charged in an indictment with having been found in the United States after being deported, in violation of the illegal reentry statute, 18 U.S.C. § 1326. *Almendarez–Torres*, 523 U.S. at 266, 118 S.Ct. 1219. At the time of the offense, the maximum sentence was two years, but the statute further authorized a prison term of up to 20 years if the defendant had been deported following a conviction for an aggravated felony. *Id.* at 226, 118 S.Ct.

1219. Almendarez–Torres pled guilty to the charge, and admitted that he had been convicted of three aggravated felonies prior to being deported. *Id.* at 227, 118 S.Ct. 1219. However, at his sentencing, he claimed that he could not lawfully be sentenced to more than two years in prison because the indictment had not alleged that he had been convicted of an aggravated felony prior to his deportation. Because that fact elevated the maximum sentence he faced, Almendarez–Torres argued that it had to be considered an element of a greater offense, and the government's failure to charge him with that offense prohibited the enhanced sentence. *Id.*

In rejecting that argument and upholding an 85–month sentence, the Supreme Court held that the sentence-enhancing feature of the.statute did not establish a separate crime, but rather was a mere sentencing factor that could permissibly be invoked by the sentencing judge. *Id.* at 228–35, 118 S.Ct. 1219. For several reasons, the Court rejected the argument that this construction of the statute created grave doubt about its constitutional validity. First, it observed that recidivism "is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." *Id.* at 243, 118 S.Ct. 1219. Thus, requiring a prior conviction that Congress intended to serve only as a sentencing factor to be treated as an element of the offense would constitute an "abrupt departure" from tradition. *Id.* at 244, 118 S.Ct. 1219. Second, the Court suggested that the *permissive* maximum enhancement in the illegal reentry statute, *i.e.,* it authorized but did not require a sentence higher than the otherwise applicable two-year maximum, was less onerous to defendants than the *mandatory* minimum sentencing provision upheld in *McMillan. Id.* at 244–45, 118 S.Ct. 1219. Third, the Court noted that judges and parole boards have typically exercised dis-

cretion within broad statutory ranges, and thus the significantly broader sentencing range created by the recidivism enhancement did not create greater unfairness to defendants. *Id.* at 245, 118 S.Ct. 1219. Finally, the Court found that there was no reason to believe that Congress, by enacting the sentencing-enhancing feature at issue, sought to evade the Constitution by taking an element of a well-established offense and restructuring the crime to make that element a sentencing factor. *Id.* at 246, 118 S.Ct. 1219.

This multi-faceted reasoning in *Almendarez–Torres* was significant. While the fact that the illegal reentry sentence enhancement provision was based on recidivism was an important consideration, the Court's constitutional analysis was by no means limited to recidivism statutes, and its reasoning gave hope to statutes that enhanced maximum sentences based on factors other than the fact of prior convictions.

That hope was dimmed a year later by *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). In *Jones*, the question was whether the federal carjacking statute, 18 U.S.C. § 2119, defined a single offense, with sentence-enhancing provisions if the crime resulted in serious bodily injury or death, or rather stated distinct offenses of which those factors were elements. *See* 526 U.S. at 229, 119 S.Ct. 1215. The Court interpreted the statute to state distinct offenses because to do otherwise would leave the statute open to constitutional concern. *Id.* at 239–40, 119 S.Ct. 1215. It stated the principle animating its constitutional doubt as follows: "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment,

submitted to a jury, and proven beyond a reasonable doubt." *Id.* at 243 n. 6, 119 S.Ct. 1215. Thus, whereas *Almendarez–Torres* had cited several factors in upholding the sentence enhancement at issue in that case, *Jones* suggested that only one of those factors—recidivism—could save sentencing provisions that elevated a defendant's maximum sentence. *Id.* at 248–49, 119 S.Ct. 1215. After observing that the emphasis in *Almendarez–Torres* on that factor left "no question that the Court regarded that fact as potentially distinguishable for constitutional purposes from other facts that might extend the range of possible sentencing," the Court in *Jones* advanced a narrow rationale for the distinction:

> One basis for that possible constitutional distinctiveness is not hard to see: unlike virtually any other consideration used to enlarge the possible penalty for an offense, and certainly unlike the factor before us in this case, a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees.

*Id.* at 249, 119 S.Ct. 1215.

Still, *Jones* was resolved on statutory construction grounds, not constitutional ones, and its suggested narrowing of *Almendarez–Torres* did not influence the circuit courts. *Jones's* footnote six, quoted above, invited the argument that the enhanced maximum sentences prescribed by the sentencing provisions of the principal federal drug statutes, 21 U.S.C. §§ 841 and 960, were unconstitutional because they were triggered not by prior convictions but by drug quantities. The Second Circuit, among other circuits, rejected that argument. Concluding that footnote six in *Jones* was only *dicta*, and "opaque" *dicta* at that, the court reaffirmed the constitutionality of sentence enhancements based

on quantities of drugs found only by judges and only by a preponderance of the evidence. *United States of America v. Thomas*, 204 F.3d 381, 383 (2d Cir.2000) (*per curiam* ), *cert. granted, judgment vacated* and *remanded*, 531 U.S. 1062, 121 S.Ct. 749, 148 L.Ed.2d 653, *abrogation recognized by*, 274 F.3d 655, 663 (2d Cir.2001) (*en banc* ).

That holding, and others like it, were short-lived because in the very next term *Apprendi* elevated *Jones*'s dicta to a constitutional rule. *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. *Apprendi* considered a challenge to a New Jersey hate crime provision that enlarged the maximum sentence for certain offenses if the trial judge found, by a preponderance of the evidence, that the defendant had acted with racially discriminatory intent. *Id.* at 468–69, 120 S.Ct. 2348. The Court began its decision by examining the historical foundation of the Sixth Amendment's right to a jury trial and its own precedents on the subject of sentencing enhancements. *Id.* at 476–83, 120 S.Ct. 2348. In summing up this survey, the Court recognized that, judges have historically exercised broad discretion in sentencing defendants *"within the range* prescribed by statute," *id.* at 481, 120 S.Ct. 2348 (emphasis in original), but

> [t]he historic link between verdict and judgment and the consistent limitation on judges' discretion to operate within the limits of the legal penalties provided highlight the novelty of a legislative scheme that removes the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty *exceeding* the maximum he would

receive if punished according to the facts reflected in the jury verdict alone.

*Id.* at 482–83, 120 S.Ct. 2348 (emphasis in original).

The Court rejected the argument that the constitutionality of a sentence enhancement could be influenced by whether it was an offense element or a "sentencing factor," the latter term having been coined for the first time in *McMillan*. *Id.* at 485, 494, 120 S.Ct. 2348. "[T]he relevant inquiry is not one of form but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's verdict?" *Id.* at 494, 120 S.Ct. 2348. Because the finding of invidious discriminatory intent caused Apprendi to receive a greater sentence than he faced when he pled guilty, the New Jersey procedure was "an unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system." *Id.* at 497, 120 S.Ct. 2348.

The precise holding of *Apprendi*, as noted above, was borrowed directly from footnote six in *Jones:* "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. The phrase "other than the fact of a prior conviction" is all that remains of *Almendarez–Torres*, and *Apprendi* completed the isolation of that case as "an exceptional departure from . . . historic practice" and a "narrow exception" to the holding of *Apprendi*. *Id.* at 487, 490, 120 S.Ct. 2348.[6] It also reinforced the

---

**6.** Indeed, there are signs in *Apprendi* that *Almendarez–Torres* may not be long for this world. The Court stated that "it is arguable that *Almendarez–Torres* was incorrectly decided" and would not survive a "logical application" of the reasoning in *Apprendi* itself. 530 U.S. at 489, 120 S.Ct. 2348. And Justice

Thomas, one of the five justices in the majority in *Almendarez–Torres*, specifically recanted his support for it. *See Apprendi*, 530 U.S. at 520–21, 120 S.Ct. 2348 (Thomas, J., concurring). Still, the "prior conviction" exception survives unless the Supreme Court rules oth-

rationale offered by *Jones* for the exception—emphasizing the "certainty that procedural safeguards attached to any 'fact' of prior conviction"—and further noted that Almendarez–Torres had not "challenge[d] the accuracy of that 'fact' in his case." *Id.* at 488, 120 S.Ct. 2348; *see also id.* at 496, 120 S.Ct. 2348 (distinguishing *Almendarez–Torres* because "there is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof").

Finally, this past term, the Supreme Court applied *Apprendi* to Arizona's capital punishment sentencing scheme. *See Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Under Arizona law, the maximum sentence for a first-degree murder was either life imprisonment or death. *Id.,* 122 S.Ct. at 2434. However, in order to determine a defendant's sentence, the sentencing judge was required to hold a hearing outside the presence of the jury after a finding of guilt. At this hearing, the government and defense could offer additional evidence related to the defendant's criminal history and conduct, and the defense could offer mitigating evidence. *Id.,* 122 S.Ct. at 2434–35. At the conclusion of the hearing, the judge was required to make factual determinations regarding whether certain enumerated aggravating factors (and any mitigating factors) were present. *Id.* Among the aggravating factors were whether the defendant had been convicted of other serious offenses, whether the defendant had been convicted while on parole, and whether the offense of conviction was particularly heinous. *Id.,* 122 S.Ct. at

2434 n. 1. Only if the judge found that at least one of the aggravating factors, and no mitigating factors, were present could the defendant receive a death sentence. *Id.,* 122 S.Ct. at 2434–35.

Applying the reasoning of *Apprendi,* the Court in *Ring* found the sentencing scheme unconstitutional because it allowed a defendant's sentence to be increased from life imprisonment to death only if a "sentencing judge, sitting without a jury" made certain factual findings related to the presence of aggravating factors. 122 S.Ct. at 2439–40. The Court reiterated that, under *Apprendi,* "the dispositive question ... 'is not one of form, but rather of effect' "—whether the judge's factual findings raised the defendant's maximum sentence. *Id.,* 122 S.Ct. at 2439 (quoting *Apprendi,* 530 U.S. at 494, 120 S.Ct. 2348). *Apprendi* was clear that "[i]f a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt." *Ring,* 122 S.Ct. at 2439 (citing *Apprendi,* 530 U.S. at 482–83, 120 S.Ct. 2348). Thus, even though Arizona's first-degree murder statute allowed for a sentence of death, Ring could not have received it under Arizona law unless the sentencing judge made the factual determination that a statutory aggravating factor existed. *Ring,* 122 S.Ct. at 2440. Because that critical finding was made by a sentencing court, Arizona's capital sentencing structure could not "survive the reasoning of *Apprendi.*" *Ring,* 122 S.Ct. at 2440, 2443.

b. *The Application of the Doctrine to the Discretionary Persistent Felony Offender Statute*

Brown was sentenced to a term of imprisonment that, at a minimum, will be

erwise. *See, e.g., United States v. Anglin,* 284 F.3d 407, 409–10 (2d Cir.2002).

more than double the statutory maximum for the charge of which he was convicted. He was convicted of criminal possession of a firearm in the third degree, a Class D felony. *See* N.Y. Penal Law § 265.02(4). Under New York law, Brown faced a prison term based on the jury's verdict of up to seven years in prison. *See* N.Y. Penal Law §§ 70.02(1)(c). The court sentenced Brown to 15 years to life in prison. His petition for habeas relief asserts that his enhanced sentence under the persistent felony offender statute violated the rule in *Apprendi* because it was based on facts (other than the fact of his prior convictions) that were neither presented to the jury nor proved beyond a reasonable doubt.

■■■ Unlike sentence enhancements based solely on prior convictions, such as the persistent violent felony offender provision in N.Y. Penal Law § 70.08, before a sentencing court may enhance a defendant's sentence under the persistent felony offender statute at issue here, it must make two particularized findings regarding the defendant. *See People v. Mason*, 277 A.D.2d 170, 717 N.Y.S.2d 130 (1st Dep't 2000) ("A persistent violent felony sentence is based entirely on the fact of the prior convictions, whereas a persistent felony sentence requires additional findings");[7] *see also Griffin v. Mann*, 156 F.3d 288, 290–91 (2d Cir.1998) (noting that the statute "requires that the court make a finding" about the defendant's character and background before the "discretionary" enhanced sentence could be imposed).

The first finding is that the defendant is a "persistent felony offender," N.Y. Penal Law § 70.10(2), that is, a person who has been convicted of two or more New York state felonies or crimes "in any other jurisdiction" with a term of imprisonment of greater than one year. *Id.* at § 70.10(1)(b). Any felony conviction, including a federal conviction, can be counted. This aspect of the statute falls squarely within the narrow safe harbor for recidivism-based sentencing enhancements. There is no doubt that, as to his prior convictions, Brown was accorded the procedural safeguards that attend lawful convictions, including the right to trial by jury.

However, the discretionary persistent felony offender statute further requires that the court be "of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest." *Id.* at § 70.10(2). This second finding must be announced formally and "set forth in the record." *Id.* Only after it has made both findings can "the court, in lieu of imposing the sentence of imprisonment authorized [by other provisions in the state's sentencing scheme,] impose the sentence of imprisonment authorized by that [scheme] for a class A–I felony." *Id.*[8]

Sentencing under the persistent felony offender provision is initiated by the court when information available to it indicates that the defendant has prior convictions

---

**7.** The New York courts' construction of the New York law at issue here is authoritative and binding on the federal courts. *See, e.g., Ring*, 122 S.Ct. at 2440.

**8.** N.Y. CPL § 400.20(1) explicitly confirms that these two steps are necessary by prohibiting the enhanced sentence unless the court: "(a) has found that the defendant is a persis-

tent felony offender as defined in subdivision one of section 70.10 of the penal law and (b) is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct are such that extended incarceration and lifetime supervision of the defendant are warranted to best serve the public interest."

that satisfy the first step of the inquiry and the court is of the opinion that the enhanced sentence "may be warranted." N.Y. CPL § 400.20(2). The court then issues an order, with adequate notice to the defendant, directing a hearing to determine whether the defendant should be subject to the enhanced sentence. *Id.* at §§ 400.20(3) & 400.20(4). The order must include a statement setting forth both the defendant's prior convictions and the "factors in the defendant's background and prior criminal conduct which the court deems relevant for the purposes of sentencing." *Id.* at § 400.20(3)(a) & (b).

At that hearing, the defendant can introduce evidence contesting the constitutionality of his prior convictions or challenging any of the other allegations in the court's order. *Id.* at §§ 400.20(6) & (7). The burden of proof is on the prosecutor, but the standard differs depending on the step in the test. *Id.* at § 400.20(5). The government must prove that the defendant has two or more prior convictions beyond a reasonable doubt with evidence that would be admissible at trial. *Id.* However, "[m]atters pertaining to the defendant's history and character and the nature and circumstances of his criminal conduct" need only be proved by a preponderance of the evidence, and the rules of evidence do not apply to that step of the hearing. *Id.*

Section 400.20(9) makes clear that there must be judicial findings of fact on the second step:

> At the conclusion of the hearing the court must make a finding as to whether or not the defendant is a persistent felony offender and, upon a finding that he is such, must then make such findings of fact as it deems relevant to the question of whether a persistent felony offender sentence is warranted. If the court both finds that the defendant is a persistent felony offender and is of the opinion that a persistent felony offender sentence is warranted, it may sentence the defendant [as though he were convicted of a class A–1 felony].

*Id.* The court can, in its sole discretion and at any time, stop the hearing "without making any finding." *Id.* at § 400.20(10). However, "the defendant may not be sentenced as a persistent felony offender" unless the court "makes the necessary findings." *Id.*

New York courts interpreting the persistent felony offender law and its procedural counterpart have consistently enforced the requirement of specific factual findings at this second step.[9] Such sentences are commonly remanded for resentencing because sentencing courts have failed to set forth clearly on the record the facts and circumstances that, in their view,

---

9. *See, e.g., People v. Garcia,* 267 A.D.2d 247, 700 N.Y.S.2d 44, 45 (2d Dep't 1999) ("Before imposing sentence, the court is obligated to set forth on the record the reasons it found this second element satisfied."); *People v. Perry,* 161 A.D.2d 1156, 555 N.Y.S.2d 515, 515 (4th Dep't 1990) ("[T]he defendant was improperly sentenced as a persistent felony offender because the court based its determination solely upon defendant's criminal conduct and failed to consider defendant's 'history and character', as required by [N.Y.] CPL § 400.20(1)(b)"); *People v. Oliver,* 96 A.D.2d 1104, 467 N.Y.S.2d 76, 78 (2d Dep't 1983) ("The procedure for determining whether [the] defendant should be sentenced as a per-

sistent felony offender requires both a hearing and a two-pronged analysis by the court to determine whether or not the defendant should be subjected to increased punishment as a persistent felony offender."); *see also People v. McClemore,* 276 A.D.2d 32, 716 N.Y.S.2d 497, 501 (4th Dep't 2000) ("There are two prerequisites to a defendant's being sentenced as a persistent felony offender."). The two-part test was a departure from New York's prior sentencing scheme, which allowed judges to impose enhanced sentences based solely on the fact of prior convictions. *See People v. Blackwell,* 32 A.D.2d 732, 302 N.Y.S.2d 78, 79 (4th Dep't 1969).

satisfy the second element of the test.[10] Indeed, Brown's own sentencing illustrates the New York courts' diligence in ensuring that enhanced sentences under the discretionary persistent felony offender statute are based on judicial findings of facts other than the fact of prior convictions. When Brown was initially sentenced in 1997, the sentencing court made the following finding: "it seems clear that given all of the facts in the defendant's background and record, it called for a sentence in excess of what would be permitted if the defendant were not adjudicated a discretionary persistent felony offender." Sent. Tr. I.C at 3. On appeal, the Appellate Division found that this "conclusory recitation at sentencing that it had reviewed the defendant's background and record was insufficient to fulfill the statute's mandate." *Brown*, 704 N.Y.S.2d at 84. It remanded the case for resentencing, highlighting the need for findings of fact on the "second element" of the test. *Id.* On remand, the sentencing court imposed the same sentence, but this time it made the necessary findings on the second element. Indeed, it made numerous factual findings in support of its conclusion that an enhanced sentence was warranted.[11] Back on appeal, the Appel-

---

**10.** *See, e.g., Garcia,* 700 N.Y.S.2d at 45 (vacating sentence where it was "impossible to ascertain what conduct or circumstances the [sentencing court] relied upon in determining that the second prong of the persistent felony offender analysis was satisfied" and rejecting the court's "conclusory recitation at sentencing that it had reviewed the defendant's presentence report, comments by counsel, and the defendant's conduct during trial"); *People v. Smith,* 232 A.D.2d 586, 649 N.Y.S.2d 444, 445 (2d Dep't 1996) (same); *People v. Montes,* 118 A.D.2d 812, 500 N.Y.S.2d 308, 309 (2d Dep't 1986) (same); *People v. Frey,* 100 A.D.2d 728, 473 N.Y.S.2d 630, 631 (4th Dep't 1984) (the sentencing court's reasons were "conclusory at best" and "did not indicate that it considered [defendant's] 'history and character' "). The sentencing court's factual findings on the second element need to be detailed and lengthy, *see, e.g., People v. Rosello,* 97 Misc.2d 963, 412 N.Y.S.2d 975, 977–79 (Sup.Ct.1979), and appellate courts reviewing them may either confirm or deny a defendant's persistent felony offender sentence. *Compare People v. Williams,* 239 A.D.2d 269, 658 N.Y.S.2d 264, 265 (1st Dep't 1997) (finding sentence as persistent felony offender improvident because of defendant's significant steps towards rehabilitation), *with People v. Mason,* 277 A.D.2d 170, 717 N.Y.S.2d 130, 130–31 (1st Dep't 2000) (finding sentence as persistent felony offender appropriate because defendant had multiple prior felonies and misdemeanors, had exhibited a pattern of behavior preying on the elderly, and was more culpable than his codefendants).

**11.** The court's findings were: (1) Brown was arrested for robbery in 1981, convicted of attempted petit larceny, and sentenced as a youthful offender to 30 days plus probation; (2) he was arrested on bench warrants three times while on probation from that offense; (3) he was convicted of charges of robbery and assault in 1983; (4) he was released on parole from those offenses in 1986, but violated his parole and was rearrested in 1988; (5) he was convicted in federal court in 1992 of conspiring to deal drugs and firearms and sentenced to 36 months in prison and 60 months of supervised release; (6) his present offense constituted a violation of the terms of his federal supervised release; (7) his federal conviction was for conduct that occurred little more than a year after the parole based on his 1983 state conviction had expired; (8) although he gave substantial assistance to investigators, Brown's federal conviction was still based on numerous deliveries of drugs and firearms to drug organizations, and at the time of his arrest Brown had attacked a law enforcement officer and was aggressive and abusive; (9) he committed the present crime only two years after being sentenced by the federal court; (10) in committing the present crime, Brown called together his friends and distributed guns to them, they all went to the roof and engaged in a gunfight, a bullet from that gunfight seriously injured a child, and Brown had admitted to disposing of the firearms after the fight; and (11) when the police searched Brown's apartment two days after the gunfight, they found in a locked closet a gun, large amounts of ammunition, crack cocaine, marijuana, zip-lock bags, and over two

late Division affirmed, holding that "the sentencing court adequately set forth on the record the reasons it was of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct demonstrated that extended incarceration and lifetime supervision would best serve the public interest." *Brown*, 726 N.Y.S.2d at 280.

 The state courts' rejection of the *Apprendi* claim in this case was contrary to clearly established federal law as determined by the Supreme Court in *Apprendi*. Brown received a sentence that far exceeded the statutory maximum for his offense of conviction based on numerous facts, other than the fact of his prior convictions, that were found by the sentencing court and were not submitted to a jury or proved beyond a reasonable doubt. Of course, the sentencing itself occurred more than two months prior to the *Apprendi* decision, but "[t]he threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established *at the time his state court conviction became final*," *Williams*, 529 U.S. at 390, 120 S.Ct. 1495, and the Appellate Division rejected Brown's constitutional claim on its merits on June 11, 2001, nearly a year after *Apprendi* was decided. *Brown*, 726 N.Y.S.2d at 280.

The Appellate Division denied the *Apprendi* claim without explanation, and the Court of Appeals denied leave to appeal, also without explanation. *See id., leave to appeal denied*, 96 N.Y.2d 916, 732 N.Y.S.2d 633, 758 N.E.2d 659 (2001) (table). In another setting, the absence of an explanation might render the inquiry on habeas review more difficult. In determining whether a "state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law," *Williams*, 529 U.S. at 413, 120 S.Ct. 1495, an explanation of the state court's conclusion is obviously helpful. But here there is no such impediment, for the New York Court of Appeals's decision in *People v. Rosen*, 96 N.Y.2d 329, 728 N.Y.S.2d 407, 752 N.E.2d 844, *cert. denied*, 534 U.S. 899, 122 S.Ct. 224, 151 L.Ed.2d 160 (2001), no doubt provides the explanation for the rejection of Brown's claim. *Rosen* was decided on April 3, 2001, just two months before the Appellate Division rejected Brown's claim, and it flatly rejected an *Apprendi* challenge to a persistent felony offender sentence. As controlling precedent, *Rosen* required the rejection of Brown's claim in the Appellate Division, and the leave application explicitly sought review in the Court of Appeals "[n]otwithstanding" *Rosen*. Amend. Pet., Ex. O at 6 n. 4. I therefore have no difficulty concluding that the state courts' "conclusion" in Brown's case was the same as the Court of Appeals's conclusion in *Rosen*.

I also have no difficulty concluding that *Rosen's* conclusion is opposite to that reached by the Supreme Court in *Apprendi* on a question of law. In *Rosen*, a jury convicted the defendant of first degree sexual abuse, a class D felony with a maximum sentence of seven years, and endangering the welfare of a child, a misdemeanor. The court imposed an enhanced sentence of twenty-five years to life under the persistent felony offender statute. 96 N.Y.2d at 333, 728 N.Y.S.2d 407, 752 N.E.2d 844. On appeal, the defendant argued that his enhanced sentence violated his rights to trial by jury and to an indictment setting forth the charge against him. *Id.* at 333–34, 728 N.Y.S.2d 407, 752 N.E.2d 844. The New York Court of Appeals rejected the claim, concluding that

thousand dollars in cash. Sent. Tr. II.B at 4–11.

"[i]t is clear from the ... statutory framework that the prior felony convictions are the *sole determinate* of whether a defendant is subject to enhanced sentencing as a persistent felony offender." *Id.* at 335, 728 N.Y.S.2d 407, 752 N.E.2d 844 (emphasis added). Regarding the factual findings required by the second element of the statute, the Court of Appeals stated that the sentencing court is "only fulfilling its traditional role—giving due consideration to agreed-upon factors—in determining an appropriate sentence within the permissible statutory range." *Id.*

With respect, the first of those observations is descriptively inaccurate. It could not be clearer that prior felony convictions are *not* the sole determinant of whether a defendant is sentenced as a discretionary persistent felony offender. No such sentence complies with New York law unless, in addition to finding the prior convictions, the sentencing judge makes findings of fact, after a hearing, that the defendant's history and character also warrant the enhanced sentence. N.Y. Penal Law § 70.10(2); *see supra.*

Second, *Rosen's* conclusion that, in finding the facts (other than the fact of prior convictions) that warrant extended incarceration under the persistent felony offender statute, the sentencing court is "only fulfilling its traditional role," is wrong. The Supreme Court reached the opposite conclusion; where, as in Brown's case, an enhanced statutory maximum *only exists if the judge makes certain factual findings at sentencing,* the judge's role is "novel[ ]," not traditional, and the

"historic link between verdict and judgment" has been broken. *Apprendi,* 530 U.S. at 482–83, 120 S.Ct. 2348. To say, as the New York Court of Appeals has in *Rosen,* that those findings are analogous to "traditional" sentencing considerations elevates form over substance, for the enhanced sentence may not be imposed without them. *Apprendi,* 530 U.S. at 494, 120 S.Ct. 2348. The question following *Apprendi* is whether the findings regarding the history and character of the defendant and the nature and circumstances of his criminal conduct exposed Brown to greater punishment than that authorized by the jury's verdict. *Id.* Because the answer to that question is "yes," Brown's sentence violated his rights under the Due Process Clause of the Fourteenth Amendment. The contrary conclusions of the New York courts violated the clear mandate of *Apprendi.*

New York could, consistent with *Apprendi,* have a sentence-enhancing provision that subjects all persons convicted of a class D felony who have two prior felony convictions to the possibility of being sentenced as though they had been convicted of an A–1 felony.[12] It could also guide the discretion of sentencing courts in those cases, such as by telling them to sentence the defendant more harshly than the maximum authorized by the offense of conviction only when they have the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will

---

**12.** *See Apprendi,* 530 U.S. at 498, 120 S.Ct. 2348 (Scalia, J., concurring) ("I think it not unfair to tell a prospective felon that if he commits his contemplated crime he is exposing himself to a jail sentence of 30 years—and that if, upon conviction, he gets anything less than that he may thank the mercy of a tender-hearted judge .... Will there be disparities?

Of course. But the criminal will never get *more* punishment than he bargained for when he did the crime, and his guilt of the crime (and hence the length of the sentence to which he is exposed) will be determined *beyond a reasonable doubt by the unanimous vote of 12 of his fellow citizens.*") (emphasis in original).

best serve the public interest.[13] Further, New York could require that the sentencing court set forth on the record the reasons for its opinion (including any factual findings), to permit appellate review, for example. Such a regime would be permissible because, at the moment of conviction, the defendant faced the possibility of life in prison based on the fact of his prior convictions alone.

*Rosen* assumes that the foregoing describes the persistent felony offender statute at issue here. But it does not: based solely on the jury's verdict finding Brown guilty of criminal possession of a weapon in the third degree, the maximum sentence he could have received was seven years. This was so because, in New York, a discretionary persistent felony offender may not legally receive an enhanced unless the court makes factual findings that support its "opinion" that an extended sentence is appropriate. In that respect, this case and *Ring* are identical, with one meaningless exception: whereas the Arizona statute in *Ring* specifically enumerated (and thus circumscribed) the aggravating factors that would justify the enhanced sentence, *see* 122 S.Ct. at 2434–37, the New York statute does not. It requires only that they relate to the history and character of the defendant or the nature and circumstances of his criminal conduct. But because both statutes require judicial findings, after a hearing, of at least one aggravating factor before the enhanced sentence is available, both violate *Apprendi.*

 That some of the facts found by the sentencing court in Brown's case *relate* to his prior convictions does not matter.

First, New York law is clear that the fact of the prior convictions, standing alone, is an insufficient basis for the findings required by the second prong of the statute. *See, e.g.,* N.Y. Penal Law § 70.10(2); N.Y. CPL § 400.20; *Perry,* 555 N.Y.S.2d at 515. More is required to sustain the enhanced sentence, and it is precisely those additional facts (*i.e.,* facts other than the fact of the prior convictions) that bring the sentence into conflict with *Apprendi.* Second, aggravating facts relating to the prior convictions are no different than any other aggravating facts. For example, the court in Brown's case relied on, *inter alia,* his attack on a law enforcement officer when he was arrested in connection with his 1992 federal conviction. For purposes of the constitutional inquiry, that aspect of his prior conviction is indistinguishable from the "fact" that contraband was found in the closet of his home, or from the "fact" that his conduct in this case violated his federal supervised release. *Apprendi* precluded reliance on any of those facts to justify a sentence beyond the unenhanced maximum of seven years because Brown never had a right to a jury determination of them. In short, the rationale of the case explains why the exception to *Apprendi's* rule is stated as "[o]ther than *the fact of a prior conviction.*" Thus, with the possible exception of facts that constituted an element of the offense, even facts relating to prior convictions fall outside the exception.

For the reasons set forth above, the state courts' assessment of Brown's *Apprendi* claim constituted a conclusion opposite to that reached by *Apprendi* itself on the question whether Brown had a right to

---

**13.** *See Apprendi,* 530 U.S. at 481, 120 S.Ct. 2348 ("We should be clear that nothing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment

*within the range* prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence *within statutory limits* in the individual case.") (emphasis in original).

a jury trial on the facts that enhanced his sentence beyond seven years. I further conclude that the facts in this case are materially indistinguishable from those in *Apprendi*. Both defendants received sentences of imprisonment that were longer than the sentences they faced when they were found guilty, either by guilty plea or by a jury. Neither could have received his enhanced sentence under the applicable state law unless a judge made a requisite finding (or findings) of fact in the sentencing phase. In sum, in both cases, the legislature removed from the jury the responsibility of determining facts that increased the prescribed range of penalties to which the defendant was exposed. Thus, in both case, the sentences were unconstitutional. *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348.

The foregoing assumes that Brown's case (and *Rosen*) are not "run-of-the-mill state-court decision[s] applying the correct legal rule" of *Apprendi* to the persistent felony offender statute. *Williams*, 529 U.S. at 406, 120 S.Ct. 1495. If they are, they do not "fit comfortably within § 2254(d)(1)'s 'contrary to' clause, and thus should be assessed under its unreasonable application clause." *Id.* Viewed from that perspective, the question is whether the New York courts unreasonably applied *Apprendi* to persistent felony offender sentences. *Id.* at 413, 120 S.Ct. 1495.

■ To the extent *Apprendi* was applied at all in this case and in *Rosen*, it was applied not just incorrectly, but unreasonably. The rule requires that any fact, other than the fact of a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. In applying that principle, the New York courts have held that only the fact of the prior

convictions—not the additional factfindings required by N.Y. Penal Law § 70.10(2) and CPL § 400.20—enhances sentences under the persistent felony offender statute. That holding is unreasonable—it is flatly contradicted by both statutes, by New York caselaw, and by the procedural history of this very case.

## CONCLUSION

For the foregoing reasons, Brown's petition is granted. The state court is directed to vacate his sentence and to resentence him in proceedings consistent with this decision. If respondent files a note of appeal, the relief granted herein is stayed pending the outcome of the appeal.

So Ordered.