People v Rawlins (2004 NY Slip Op 50074(U))

[*1]

People v Rawlins

2004 NY Slip Op 50074(U)

Decided on February 25, 2004

Supreme Court, New York County,

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 25, 2004

Supreme Court, New York County,
 THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff,
against
MICHAEL RAWLINS, Defendant.
Ind. No. 2476/03

Russell Neufeld, Esq., the Legal Aid Society (Stephen Pokart, Esq., of counsel), 49 Thomas Street, New York, New York 10017, for the defendant; Hon. Robert M. Morgenthau, District Attorney, New York County (Kim Kinirons, Esq., of counsel), One Hogan Place, New York, New York 10013, for the People

Carol Berkman, J.
Defendant has been convicted after trial by jury of six counts of burglary in the third degree.[FN1] The People have moved that he be sentenced pursuant to P.L.§70.10 and C.P.L.§400.20 as a discretionary persistent felony offender. The defense argues that these statutes are unconstitutional under the decisions in Apprendi v. New Jersey, 530 U.S. 466 (2000), and Ring v. Arizona, 536 U.S. 584 (2002), and further that the decision in Ring invalidates the recent decision of the New York Court of Appeals upholding the scheme against this very attack. The defendant contends that the decision of the New York Court of Appeals was "insupportable" and "untenabl[e]." On February 4, 2004, a hearing was held. The defendant essentially stood mute with respect to his multiple felony convictions, which were proved by certificates of conviction and a certified fingerprint comparison. The defense asserted in conclusory (and therefore inadequate) fashion that the convictions were unconstitutionally obtained (and accordingly that challenge was rejected), and otherwise declined to offer evidence at the hearing.
The Constitutionality of C.P.L.§400.20 and P.L.§70.10
This court's analysis of this issue must begin and end with People v. Rosen, 96 N.Y.2d 329, cert. den. 534 U.S. 899 (2001).[FN2] The beginning is simply to say, as did Justice Fried in People v. Edward Lee, NYLJ 11/28/03, p. 18, col. 1, that this court is bound by the decisions of [*2]the New York Court of Appeals. The end, however, is to point out that the district court (and state trial court) decisions finding that the discretionary persistent felony offender scheme is unconstitutional are premised on an impermissible rejection of the New York Court of Appeals' interpretation of the statutes in question.
In Rosen, the Court of Appeals made clear that a person convicted of a felony who has been twice before convicted of felonies and sentenced to state prison faces a range of sentence of up to twenty-five years to life:

"In this case, however, it was defendant's prior felony convictions an explicitly noted exception to the general rule in Apprendi that initially subjected defendant to enhanced sentencing.
". . . . It is clear from the foregoing statutory framework that the prior felony convictions are the sole determinate of whether a defendant is subject to enhanced sentencing as a persistent felony offender."
96 N.Y.2d at 334-35 (emphasis supplied).
Given this conclusion, Judge Gleeson's holding in Brown v. Greiner, 258 F. Supp.2d 68 (E.D.N.Y. 2003), appeal pending, # 03-2242 (2d Cir.), is puzzling.[FN3] He recognizes that a statutory scheme subjecting all persons convicted of a felony who have two prior felony convictions to the possibility of an A-1 sentence depending on a judicial consideration of the very same discretionary factors set forth in our statute would be consistent with Apprendi: "[s]uch a regime would be permissible because, at the moment of conviction, the defendant faced the possibility of life in prison based on the fact of his prior convictions alone." 258 F.Supp.2d at 92. Yet, the Brown holding is premised on the conclusion that Rosen wrongly assumes this is what the New York State statute says:
 "With respect, the first of those observations is descriptively inaccurate. It could not be clearer that prior felony convictions are not the sole determinant of whether a defendant is sentenced as a discretionary persistent felony offender. No such sentence complies with New York law unless, in addition to finding the prior convictions, the sentencing judge makes findings of fact, after a hearing, that the defendant's history and character also warrant the enhanced sentence. N.Y. Penal Law § 70.10(2). . . ."
Id. at 91.
Surely the New York Court of Appeals is the ultimate arbiter of what a statute of this State says and means. See, e.g., Allstate Insurance Company v. Serio, 261 F.3d 143, 150-151 (2d Cir. 2001). Nonetheless, in Besser v. Walsh, 2003 WL 22801952 (S.D.N.Y.), Magistrate Judge Peck stated that "Rosen appears to be an effort to shoehorn the persistent felony offender sentencing scheme into the restrictive interpretation of Apprendi proffered in Justice O'Connor's Apprendi dissent" (Id. at *31). The magistrate judge concludes, citing the Brown decision, that were the legislature to provide that persistent felony offenders should receive the life sentence unless the sentence is reduced by the trial judge, the statute would withstand constitutional scrutiny (Id. at *32). Yet Brown does not rest on such an analysis.
Finally, at *33, the magistrate judge nominally recognizes that state court interpretations [*3]of state law are normally controlling, but then criticizes and rejects the interpretation of the statutes by the New York Court of Appeals and justifies this by that Court's reference in Rosen to the requirement that the sentencing court consider the "character prong" in determining whether enhancement is warranted. The magistrate judge thus concludes that "Rosen thus effectively left unchanged the substance of how the sentencing statute works, and offered nothing but a metaphysical distinction as to when a defendant is 'subject' to enhancement" (Id.). The magistrate judge claims that he need not go so far as to call the Rosen decision an "obvious subterfuge to evade consideration of a federal issue" (fn. 59), but there is no other way to read his decision.[FN4]
As to the state court decisions, in People v. Cephas, 2003 WL 21783355, Judge Stone found a constitutional defect with the statutory scheme pursuant to Ring, but then construed the scheme "in a manner consistent with Federal Constitutional requirements" (id. at *5) and sentenced the defendant as a discretionary persistent felony offender. In People v. West, 768 N.Y.S.2d 802 (Sup. Ct. N.Y. Co. 2003), the court followed the Brown interpretation of the statutes, and thus rejected the interpretation by the Court of Appeals. Accordingly, the West court concluded, the New York discretionary persistent offender statutes were unconstitutional. The West court felt that it was justified in disregarding Rosen, and following what it considered the sounder reasoning of federal cases, based on Ring, which was decided after Rosen. 768 N.Y.S.2d at 804-05.
In this court's view, the West reasoning is flawed: if the Court of Appeals wrongly interpreted the New York statutes, then the statutory scheme was already unconstitutional under Apprendi, and Ring changed nothing. Ring merely applied Apprendi to capital sentencing. Ring, 536 U.S. at 589 ("Capital defendants, no less than noncapital defendants, we conclude, are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment."). Ring did not modify Apprendi or extend its reach in non-capital cases, and this court remains bound by Rosen's holding that Apprendi did not invalidate the discretionary persistent felony offender sentencing provisions.
The decisions finding the New York discretionary persistent felony offender statutes to be unconstitutional have erroneously equated the requirement of Apprendi, 530 U.S. at 494, and Ring, 536 U.S. at 604, that a jury determine any fact (other than prior convictions) that exposes the defendant to a greater penalty than otherwise authorized by the jury's guilty verdict alone, with the requirement that a judge engage in fact-finding before imposing the maximum authorized sentence. That kind of judicial fact-finding is not prohibited by these decisions. See [*4]Apprendi, 530 U.S. at 481 ("nothing in this history [of practice at common law] suggests that it is impermissible for judges to exercise discretion taking into consideration various factors relating both to offense and offender in imposing a judgment within the range prescribed by statute"[emphasis in original]).
The only factual prerequisite for rendering a defendant eligible for enhanced sentencing as a persistent felony offender is his prior record of convictions and state prison sentences. No defendant without such a prior record can be sentenced to an enhanced term as a persistent felony offender. The sentencing court's exercise of discretion, based on the defendant's background and character and the nature of the offense(s), is not contingent on the determination of any additional specific fact required by statute or decision, and therefore does not implicate the Sixth Amendment's jury trial guarantee. Apprendi, 530 U.S. at 494 n.19 ("the term ['sentencing factor'] appropriately describes a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence within the range authorized by the jury's finding that the defendant is guilty of a particular offense" [emphasis in the original]).
Under New York law, as authoritatively interpreted in Rosen, any persistent felony offender is eligible to be sentenced to a more severe punishment than otherwise provided for the offense, based solely upon the prior convictions and sentences; nothing in Apprendi or Ring prevents the state from leaving with the judge the final determination of whether that offender should receive that punishment. Indeed, neither the petitioner nor the Court in Ring questioned the authority of the judge to weigh aggravating and mitigating factors, and to make the ultimate determination between life and death based upon that evaluation, as long as the jury had first made a finding of the existence of an aggravating factor that exposed the defendant to the possibility of a death sentence. Ring, 536 U.S. at 597 n.4; id. at 612 (Scalia, J. concurring).
As Mr. Justice Scalia described these decisions, the holdings are as follows:

"Our decision in Apprendi . . . clarified what constitutes an 'element' of an offense for purposes of the Sixth Amendment's jury-trial guarantee. Put simply, if the existence of any fact (other than a prior conviction) increases the maximum punishment that may be imposed on a defendant, that factno matter how the State labels it constitutes an element, and must be found by a jury beyond a reasonable doubt [citation omitted].
". . . . In Ring . . . , we held that aggravating circumstances that make a defendant eligible [emphasis supplied] for the death penalty 'operate as "the functional equivalent of an element of a greater offense"'[citation omitted]. That is to say . . . the underlying offense of 'murder' is a distinct, lesser included offense of 'murder plus one or more aggravating circumstances.' Whereas the former exposes a defendant to a maximum penalty of life imprisonment, the latter increases the maximum permissible sentence to death."
Sattazahn v. Pennsylvania, 537 U.S. 101, 111 (2003). See Ring, 536 U.S. at 609 ("Because Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense,' Apprendi, 530 U.S., at 494, n.19 . . . the Sixth Amendment requires that they be found by a jury").
Ring was found guilty of felony murder. He was not eligible for the death penalty unless he was the actual killer or was a major participant in the armed robbery and exhibited a reckless [*5]indifference for human life. 536 U.S. at 594. Under the Court of Appeals' authoritative interpretation of the discretionary persistent felony offender statutes, this defendant is eligible for a life sentence if he has previously served two state prison sentences for felony convictions. This court's discretion to so sentence him is bound by standards: he should not receive the life sentence for which he is eligible unless evidence establishes that his history and character and the nature and circumstances of his criminal conduct merit that harsh treatment. While this statutory scheme makes the discretionary standards and the burden of proof explicit, these are the very same rules which govern this court's discretion in choosing, for example, an appropriate sentence between the minimum and maximum sentences for a class B felony or determining whether to impose sentences concurrently or consecutively.[FN5] The explicit findings facilitate review of the more severe sentence for which the defendant is already eligible.
The history and character prong
As is most commonly the case with respect to these applications to sentence the defendant as a discretionary persistent felony offender, the People rely virtually exclusively on the facts of the cases which have resulted in the instant guilty verdicts together with the defendant's prior record.[FN6] In the instant case, the jury has found beyond a reasonable doubt that the defendant broke into multiple commercial establishments over a six-week period for the purpose of stealing. He was convicted after trial by jury of burglary in the third degree and on October 30, 1987, sentenced to a term of three-and-one-half to seven years; he was convicted on February 4, 1997, of criminal possession of stolen property in the fourth degree and sentenced to two to four years. Accordingly, he is a discretionary persistent felony offender.
Additionally, on February 20, 1986, he was convicted of burglary in the third degree and sentenced to one year. He was convicted in 1987, as previously noted, and then again on September 5, 1991, of burglary in third degree and sentenced to a term of two to four years. This 1991 conviction relates back to a 1987 crime, for which defendant was initially convicted after trial; that conviction was reversed, and defendant then pled guilty to burglary in the third degree. On February 4, 1997, he received concurrent sentences of two to four years for the crimes of criminal possession of stolen property in the fourth degree (1996 arrest) and criminal sale of a controlled substance in the fifth degree (arising out of a 1994 arrest). In other words, the defendant has been convicted of felonies committed in 1985, 1987 (two felonies), 1994, and 1996. Additionally, the People point to the defendant's multiple misdemeanor convictions.
It is apparent, as defendant has admitted (Probation Report, page 3), that defendant abuses drugs, and it is a reasonable inference that his criminality is in some fashion connected with his drug abuse. Yet, given the opportunity to present mitigating evidence, the defense [*6]declined: there is no indication before the court of any bona fide efforts by the defendant to deal with his addictions without resorting to crime.[FN7] Accordingly, the person before the court is a defendant in his fifth decade who still persists in committing crimes. Indeed, from the number of burglaries represented by the instant conviction, it appears that his rate of committing crimes is escalating rather than slowing as he ages. To be sure, consecutive sentences for each of the burglaries of which defendant now stands convicted might appear to be the functional equivalent of the discretionary persistent felony offender statute, and were that statute unavailable, this court would impose such sentences. But the statute is available, and not only clearly appropriate but virtually mandated given defendant's history and character as summarized above. Accordingly, defendant is sentenced as a discretionary persistent felony offender to concurrent terms on each count of 15 years to life.
The foregoing constitutes the order and opinion of this court.
Dated: New York, New York
 February 25, 2004CAROL BERKMAN
Decision Date: February 25, 2004
Footnotes

Footnote 1:In a previous decision, this court has denied the defense motion to set aside the verdict with respect to count 2. Since that motion raises nonfrivolous issues, it should be noted that a vacatur of the conviction under that count would in no way change this court's conclusions with respect to the imposition of a discretionary persistent felony offender sentence.

Footnote 2: The decision of Judge Hellerstein rejecting the Rosen conclusion is unreported. Rosen v. Walsh, 02 CV 7782 (S.D.N.Y.), appeal pending, #03-2480 (2d Cir.).

Footnote 3: The appeals of the state respondents in Rosen and Brown have been consolidated, with argument in the Second Circuit presently scheduled on or after the week of April 21, 2004.

Footnote 4:The magistrate judge found Rosen unclear (2003 WL 22801952 at *31) and relies for clarification on Lindstrom, In the Shadow of Apprendi: People v. Rosen Reveals the Impractical Nature and Uncertain Future of Apprendi v. New Jersey, 36 Colum. J.L.&Soc.Probs. 103, 117 (Fall 2002). In this court's view, that reliance contributed to error, because this article mistakenly attributes a "spirit" and "intention" to the Supreme Court's Apprendi decision, to wit to give juries more sentencing discretion, and to take sentencing discretion from judges. 36 Colum.J.L.&Soc.Probs, at 104-05 and 111. To the contrary, Apprendi simply requires that a jury find any fact that increases the sentencing range, but in no way impinges on the sentencing judge's discretion within the statutory range. 

Footnote 5:Were this court not sentencing the defendant as a persistent felony offender, he could be sentenced to the maximum sentence for each burglary, to run consecutively, for a sentence aggregating twenty-one to forty-two years. While a sentence of fifteen to thirty years might be the functional equivalent of the fifteen-year-to-life sentence imposed herein, it is this court's view that the People are entitled to the discretionary persistent felony offender sentence.

Footnote 6:The defendant's record in this State and in Florida dates back to 1971, but the People essentially rely on the defendant's record since 1985.

Footnote 7:His NYSID indicates a history of bench warrants, violations of temporary release and a parole violation after he was assigned to the Willard drug program as a condition of parole. Given the procedural requirements of the discretionary persistent felony offender statutes, the court may not and does not rely on the NYSID to establish the defendant's bad history and character. The point is simply that the NYSID does not present any mitigating features.